UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| COLLYN AHRENS AUBREY, STEVEN BABOUN, KAETEN J. BONLI, JINGRUO CHENG, LYDIA K. CROUSE, KAREN DIAS, CAROLINE A. GARCIA, TERE GARCIA, AMANDA JOHNSON, JAVARIUS JONES, TANIA KHOURI, JOSEPHINE LEE, RAE LAVANDE PELLERIN, JESSICA SALDAÑA, CORALINE JINGYAN WENG and SNOW XUECAN YE, on behalf of themselves and all others similarly situated, | 21 Civ. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | |
| - against - | |
| THE NEW SCHOOL, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs, on behalf of themselves and all others similarly situated and by their attorneys identified below, for their class action complaint against defendant The New School, allege as follows:

**Nature of Action**

1. This is an action for breach of implied contract and unjust enrichment. It is brought as a class action by former or current students at the Parsons School of Design ("Parsons"), one of the five major colleges comprising defendant The New School ("The New School"), who in March 2020 were pursuing courses of study leading to the award of fine arts degrees on behalf of themselves and on behalf of a class consisting of all other former or current Parsons students similarly situated. The class is limited to students at Parsons and is not brought on behalf of students at any other college of The New School. The action is a consequence of

the Covid-19 pandemic which began in early 2020, and of the acts and omissions Parsons thereafter took or failed to take that resulted in economic injury to plaintiffs and the class.

2. On their own behalf and on behalf of the class of persons they represent, plaintiffs seek damages or restitution of tuition and fees paid to defendant with respect to the spring term of 2020 and any other period during which plaintiffs and the class have paid or will pay tuition and fees and defendant has failed or will fail to provide them with the education it promised them. More specifically, plaintiffs seek recovery in this case for breach by defendant of its specific promises made concerning and in connection with their courses of study, including but not limited to promises of studio-based, hands-on, in-person, on-campus education with access to specialized studios, facilities, equipment, and faculty necessary to plaintiffs' courses of study.

**Jurisdiction**

3. The jurisdiction of this Court is founded upon 28 U.S.C. §§1332(d)(2)(A) and 1332(d)(2)(B), in that the matter in controversy exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs, and the action is a class action in which at least one member of the plaintiff class is a citizen of a State of the United States different from the citizenship of defendant and at least one member of the plaintiff class is a citizen or subject of a foreign state and defendant is a citizen of a State of the United States.

**Parties**

4. Plaintiff and class representative Collyn Ahrens Aubrey is a citizen of the State of Colorado. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

5. Plaintiff and class representative Steven Baboun is a citizen of the State of New York. In the Parsons spring semester of 2020, he was pursuing a course of study in photography at Parsons and was a candidate for an MFA degree in 2020.

6. Plaintiff and class representative Kaeten Jeffrey Bonli is a citizen of the Nation of Canada. In the Parsons spring semester of 2020, he was pursuing a course of study or program in fine arts at Parsons and was a candidate for an MFA degree in 2020.

7. Plaintiff and class representative Jingruo Cheng is a citizen of the Nation of China. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

8. Plaintiff and class representative Lydia K. Crouse is a citizen of the State of New York. In the Parsons spring semester of 2020, she was pursuing a course of study in photography at Parsons and was a candidate for an MFA degree in 2020.

9. Plaintiff and class representative Karen Dias is a citizen of the Nation of India. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2021.

10. Plaintiff and class representative Caroline A. Garcia is a citizen of the Nation of Australia. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2021.

11. Plaintiff and class representative Tere Garcia is a citizen of the State of New York. In the Parsons spring semester of 2020, she was pursuing a course of study in photography at Parsons and was a candidate for an MFA degree in 2020.

12. Plaintiff and class representative Amanda Johnson is a citizen of the State of New York. In the Parsons spring semester of 2020, she was pursuing a course of study in photography at Parsons and was a candidate for an MFA degree in 2020.

13. Plaintiff and class representative Javarius Jones is a citizen of the Nation of Canada. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

14. Plaintiff and class representative Tania Khouri is a citizen of the State of Oklahoma. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

15. Plaintiff and class representative Josephine Lee is a citizen of the Nation of Canada. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

16. Plaintiff and class representative Rae Lavande Pellerin is a citizen of the State of New York. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

17. Plaintiff and class representative Jessica Saldaña is a citizen of the State of New York. In the Parsons spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

18. Plaintiff and class representative Coraline Jingyan Weng is a citizen of the Nation of China. In the spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

19. Plaintiff and class representative Snow Xuecan Ye is a citizen of the Nation of China. In the spring semester of 2020, she was pursuing a course of study in fine arts at Parsons and was a candidate for an MFA degree in 2020.

20. Defendant The New School is a private New York State-chartered research university founded in 1919 and operating principally in the City of New York with headquarters located at 66 West 12th Street, New York, NY 10011. For diversity of citizenship purposes, The New School is a citizen of the State of New York. The New School has an endowment exceeding $400 million. In 2020, it had approximately 10,000 enrolled students.

## Class Action Allegations

21. Plaintiffs bring this action individually and on behalf of a class consisting of themselves and all other students who were enrolled in Parsons for all periods during which the specific promises regarding their education made to them by The New School were not fulfilled and therefore breached. Plaintiffs estimate that the class consists of more than 5000 individual students.

22. The action is properly maintainable as a class action because:

    a. The class is so numerous that joinder of all members is impracticable;

    b. Common questions of law and fact predominate over questions affecting individual members of the class, including whether defendant's promises with respect to courses of study in Parsons constitute an enforceable implied contract, whether and how defendant breached that implied contract with plaintiffs and the class, whether defendant has been unjustly enriched through its retention of tuition and certain fees, and what damages or restitution should be assessed or ordered, respectively, against The New School;

      c. Plaintiffs' claims are typical of the claims of the other members of the class, and plaintiffs are adequate representatives of and will adequately protect the interests of the class in that their claims typify claims of other students at Parsons; and

      d. Plaintiffs will fairly and adequately protect the interests of the class and have retained competent counsel experienced in litigation of this nature to prosecute their claims.

**Facts Common to the Claims for Relief**
**The Parsons School of Design**

  23. Parsons was founded as an independent school in 1896. It is one of the leading schools of design in the United States. There are six autonomous schools (or divisions) within Parsons, each entailing a distinct course of study. These are the School of Art, Media, and Technology; the School of Art, Design, and Theory; the School of Constructed Environments; the School of Fashion; the School of Design Strategies; and a program in Flexible Learning. Additionally, there are differentiated courses of study within these schools. There are, for example, courses of study in Design and Technology, Fine Arts, Illustration, Photography, Communications Design, Data Visualization, Interior Design, Lighting Design, Fashion Design and Society, Fashion Product and Collection, Fashion Systems and Materiality, Textiles, Product Design, Industrial Design, Architecture, and Architectural Design.

  24. In the spring term of 2020, according to its website, Parsons had approximately 5000 enrolled students. Parsons states on its website that approximately 35% of its students are international students. Parsons offers both undergraduate courses of study culminating in the award of bachelor's degrees and graduate courses of study culminating in the award of master's degrees. For the school year that began in the Fall of 2019, tuition and fees at Parsons were in excess of $23,000 per semester.

25. As a school of design, the Parsons curriculum is intended to produce graduates who are prepared to enter the various fields and careers to which training in design leads. In almost all cases, students graduating from Parsons have created work product in connection with their theses such as photography, art, architecture, etc., and this work product is the key element allowing graduates to commence their careers. The curriculum is expected to be and often is a springboard for careers in design, art, fashion, photography, architecture, and other fields. Parsons is well-integrated in the design and arts industries centered in New York City. Its location in New York City and the access that affords to the arts community there only adds to its prestige and to the value of the education it offers.

26. Parsons represents to its students that they will work in close coordination with faculty, stating that "Parsons faculty comprises world-renowned artists, scholars, and practitioners who lead their industries and academic fields. You work closely with them, benefitting from their scholarship and professional experience and networks. Our small class sizes enable you to benefit from their real-world experience and industry access."

27. Parsons describes its mission as follows:

> Parsons students are designers, artists, and scholars who learn to apply the transformative capacity of design responsibly, creatively, and purposefully. Our diverse community of students and faculty explore multiple sites and scales of engagement, from on-campus research initiatives to partnerships that bring about change in New York and in the world.

28. Parsons describes its vision as follows:

> Parsons' future will be shaped by the core values that have defined our past: curricular innovation, collaborative methods, pioneering uses of technology, and experimentation. As part of The New School, Parsons shares an institutional vision that aligns with shifts in the global economy, society, and environment, which animate our mission and our values:

7

Creativity, innovation, and a desire to challenge the status quo, both in what and how we teach and in the intellectual ambitions of the school itself;

Social engagement, orienting students' academic experience to help them become critically engaged citizens dedicated to solving problems and contributing to the public good

29. Parsons describes its educational approach as follows:

We will fulfill our mission by extending The New School's legacy as a nontraditional academic community, nimble and responsive to change, that:

Focuses on and engages with critical contemporary issues;

Prioritizes humanity and culture in designing systems and environments to improve the human condition, an approach that draws on design thinking and the liberal, creative, and performing arts;

Places project-based learning at the center of the educational experience;

Takes full advantage of our New York City location and connectivity to global urban centers.

**The Nature of the Contract Between the Plaintiff Class and Parsons**

30. The relationship between plaintiffs and the plaintiff class, on the one hand, and defendant on the other, is contractual in nature. While no formal written contract governs that relationship, an enforceable contract arises or may be implied from the specific written promises made by Parsons to its students and from the presumed intention of the parties as indicated by their conduct.

31. The contract, and the contractual relationship evidenced by it, is contained in documents authored, promulgated, and disseminated by Parsons which describe and define that relationship and set forth certain specific promises and representations relating to the

8

education to be afforded by Parsons to its students. Such documents include but are not limited to catalogues, regulations, handbooks, statements included in manuals, class syllabi, and materials concerning studios and facilities and related documents. The statements in such documents, taken as a whole or in reasonable part, as well as the parties' conduct in furtherance of those statements, express the parties' contractual intent.

**The Specific Promises and Representations**
**Regarding Art and Design Education at Parsons**

32. In the various documents from which a contract may be implied, Parsons makes clear that studios and other facilities, together with the specialized equipment used in art and design, are central to the education it promises its students. It states, "[t]he studio is your space to make work." The making of work is central to art and design and to education for art and design.

33. On its website describing its MFA program in fine arts, Parsons promised that the educational format of its program would be "full time, on-campus" for a "duration" of two years.

34. Relatedly, Parsons also promised to provide students with a "clean, newly painted studio" at the outset of each term. Statements that surround these promises support the implication that education at Parsons would be in-person and on-campus, not online.

35. Parsons describes its master's program in fine arts as follows:

> The MFA Fine Arts program is guided by the belief that artists perform an essential role in society. The program is rigorously interdisciplinary and enables you to develop diverse studio practices while pursuing related scholarship and research. You can explore various modes of study, ranging from formal and aesthetic investigations to social and political engagement. Students come from a variety of backgrounds and cultures and work in media

including painting, drawing, sculpture, video, performance, digital media, installation, and photography.

36. Contained in this description is the explicit promise that Parsons would provide studios to its students that would enable them to "develop diverse studio practices." Implicit in this description is the promise that Parsons would provide its students with studios, thus buttressing the promise alleged above.

37. The central facility for learning at Parsons is the studio and similar facilities. Parsons makes this clear, for example, by listing its "Fine Arts Studios" at the very outset of its Fine Arts handbook.

38. Parsons reinforces the centrality of studio resources by making clear that full-time faculty members will be available for consultation and advising its students to "[s]imply send the faculty member an email to request a studio visit when needed."

39. In describing what it labels as "community etiquette," Parsons makes clear that "[a]ll students using studios are part of a community which they should respect and support," and urges students to "actively contribute to events happening within the studios such as Open Studios and Final Show."

40. The "Making Center," which Parsons describes as the "anchor" of its "network of integrated campus resources," houses labs, shops, studios and their specialized equipment" and "enable[es] students to bring new materials, techniques, and partners into their making practices." The Parsons website explains:

> At Parsons, making of all kinds — forming new objects, ideas, systems, partnerships — is an essential part of becoming an artist or designer. Accordingly, we're developing new interdisciplinary courses, workshops, and other project-based learning experiences to make full use of the space and state-of-the-art making equipment — including tools never before available on campus.

41. In describing thirty-four (34) separate labs, shops, studios, the website touts Parsons' "new 3D-printing technologies, a complete ceramics 'wet lab,' updated printmaking facilities including a large-scale photo printer, and white boards, pin-up areas, and configurable work spaces for developing and sharing ideas." The website concludes that the "Making Center reaffirms Parsons' leadership in a world where making is increasingly valued as a powerful problem-solving endeavor."

42. A listing of even a few of these 34 labs, shops, and studios discloses both their extent and their central importance to the education Parsons offers. Examples are the 3D Printer Lab, the Alternative Process Darkroom, the Book Arts Studio, the Ceramics & Wet Shop, the D12 Prototyping Shop, the Darkroom, the Design Lab, the Digital Knit Lab, Digital Photo Labs, and the E2 CNC Shop.

43. Access to these facilities and to the equipment contained in them is essential to the education Parsons made available to its students. By showcasing these facilities on its website as it did, Parsons promised that if students paid the tuition and fees required of them, they would have such access.

**The Effect of the Coronavirus Pandemic on Plaintiffs and the Class**

44. The coronavirus pandemic that began spreading in the United States in early 2020 had well-documented effects on higher education. Virtually all (if not all) universities and colleges in the United States went into lockdown in March 2020.

45. On March 26, 2020, defendant announced the temporary closure of its facilities for an indeterminate amount of time and the suspension of in-person, on-campus learning. It moved all education of Parsons students on-line using Zoom or similar platforms.

46. In the case of plaintiffs and the class, this entailed shutting off all access to studios and studio work as well as equipment appurtenant to studios, closing storage spaces and shops, labs, and other facilities in which work had been stored, suspending exhibitions of student work, including the key thesis work that is the centerpiece of Parsons education.

47. For certain disciplines on-line learning can be an effective substitute for in-person learning. This is not the case with art and design. By their nature, education in these fields requires physical presence in studios and other, specialized facilities, and close coordination with instructors and others such as mentors, peers, and critics, as well as access both to the physical studio and production spaces and to the specialized equipment used to produce artwork in these fields.

48. Additionally, the move to online classes required Parsons students to realize projects they had been working on for the first half of the semester—or, for thesis students, a full additional semester—as a proof of concept with documentation, rather than a completed work.

49. Parsons students typically rely on producing a professional portfolio as a means of securing future opportunities and employment. A proof of concept will not reach the necessary level of completion to serve this function.

50. Without the ability to "develop diverse studio practices" the education promised by Parsons has lost its core element.

51. The unique needs of an art and design education requires studio space to work and specialized tools inaccessible outside of an educational environment prior to becoming established in a chosen field. Without access to these resources, it became virtually impossible for Parsons students to their projects.

52. In particular, plaintiffs and the class have largely been unable to complete their thesis work or, if they have been able to complete the work, to transport it to the Parsons campus and to participate in a thesis show. Parsons has yet to advise definitively when this might occur. Plaintiffs and the class have incurred substantial damages, in the form of payment of tuition and in other forms, by reason of Parsons' delay.

53. Plaintiffs are not complaining of the quality of the education Parsons provided them. They are complaining only of the fact that the education Parsons promised them was not what Parsons provided.

54. Because plaintiffs and other members of the class believed that Parsons had breached its promises and had not provided any effective alternative, they demanded that Parsons refund tuition and fees. Parsons rejected that demand.

55. Plaintiffs and members of the class have sustained various economic harms. While loss of tuition and fees is the central element of damages, other damages, in the form of increased costs relating to their work, to complete loss of education for which they paid, to U.S. visa complications arising the March 2020 shutdown, to the impaired value of their education, all should be taken into account.

**FIRST CLAIM FOR RELIEF**
**(Breach of Implied Contract – Restitution)**

56. Plaintiffs repeat here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

57. By reason of the foregoing, defendant breached its implied contract with plaintiffs.

58. Plaintiffs have been damaged by such breach in an amount to be proven herein, but exceeding $5 million, representing the tuition and fees paid by them to Parsons with respect to the Parsons spring semester of 2020.

59. Plaintiffs will be damaged in a further amount to be proven representing tuition and fees at full amount without being afforded the education promised to them for periods following the spring semester of 2020.

60. Plaintiffs are entitled to recover such amounts from defendant as restitution for tuition and fees paid.

**SECOND CLAIM FOR RELIEF**
**(Breach of Implied Contract – Damages)**

61. Plaintiffs repeat here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

62. By reason of the foregoing, an implied contract exists between plaintiffs and defendant.

63. The terms of that contract consist of the specific promises and undertakings on the part of defendant as alleged above.

64. By reason of defendant's failure to have provided the promised education, defendant has breached that implied contract.

65. Plaintiffs have sustained damages by reason of that breach in the form of tuition and fees paid to defendant, and are entitled to recover such damages from defendant.

66. Plaintiffs have been separately injured by reason of Parsons' acts or omissions concerning thesis work and thesis shows.

67. As a result of that breach, plaintiffs and the class are entitled to recover damages in such amounts as may be proven.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

68. Plaintiffs repeat here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

69. By reason of the foregoing, defendant was enriched by securing tuition and fees from plaintiffs but failing to provide promised educational facilities, teaching, activities, and resources necessary for plaintiffs' education.

70. This enrichment was at plaintiffs' expense.

71. Equity and good conscience militate against permitting defendant to retain such enrichment.

72. Plaintiffs are accordingly entitled to recover from defendant the value of such enrichment in an amount to be determined by the trier of fact but no less than the amount of Five Million Dollars ($5,000,000), representing the tuition and fees paid by them to Parsons with respect to the spring semester of 2020 and all other semesters for which Parsons charges and collects full tuition and fees without fulfilling the contractual promises it has made to plaintiffs and the class of persons they represent.

WHEREFORE, plaintiffs demand judgment awarding them restitution or damages and such other and further relief as the Court may deem just and proper in the circumstances.

Dated: Cornwall-on-Hudson, New York
June 3, 2021

                                        KARLINSKY LLC

                                        By: /s/ Martin E. Karlinsky
                                              Martin E. Karlinsky, Esq.
                                              Bonnie H. Walker, Esq.
                                        103 Mountain Road
                                        Cornwall-on-Hudson, New York 12520
                                        (646) 437.1430 (Office)
                                        (917) 623.9102 (Cell)
                                        martin.karlinsky@karlinskyllc.com
                                        bonnie.walker@karlinskyllc.com

                                        *Attorneys for Plaintiffs*