UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

COLLYN AHRENS AUBREY, STEVEN BABOUN, KAETEN J. BONLI, JINGRUO CHENG, LYDIA K. CROUSE, KAREN DIAS, CAROLINE A. GARCIA, TERE GARCIA, AMANDA JOHNSON, JAVARIUS JONES, TANIA KHOURI, JOSEPHINE LEE, RAE LAVANDE PELLERIN, JESSICA SALDANA, CORALINE JINGYAN WENG AND SNOW XUECAN YE, on behalf of themselves and all others similarly situated,

Case No.7:21-CV-04915 (KMK)

Plaintiffs,

-against-

THE NEW SCHOOL,

Defendant.

------------------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

JACKSON LEWIS P.C.
44 SOUTH BROADWAY, 14TH FLOOR
WHITE PLAINS, NEW YORK  10601
(914) 872-8060
BY:   JONATHAN M. KOZAK, ESQ.
      ISAAC J. BURKER, ESQ.
      SUSAN D. FRIEDFEL, ESQ.
      MATTHEW BASS, ESQ.

*ATTORNEYS FOR DEFENDANT*

## **TABLE OF CONTENTS**

**Page #**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ................................................................................... 4

ARGUMENT ........................................................................................ 5

I.      LEGAL STANDARD.................................................................. 5

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT. ............... 7

        A.   Plaintiffs' Breach Of Contract Cause Of Action Must Be Dismissed Because
             Plaintiffs Fail To Adequately Plead The Existence Of Any Promise To Provide
             Only In-Person Classes. ................................................................. 7

        B.   Plaintiffs Fail To Plead Breach Of Any Express Or Implied Promise To Provide
             Only On Campus, In-Person Classes. ............................................. 14

        C.   Plaintiffs' Breach of Contract Cause of Action Must Be Dismissed Because
             Plaintiffs Did Not Suffer Any Cognizable Damages. ................................ 17

        D.   Plaintiffs' Breach Of Contract Cause Of Action Must Be Dismissed Because
             TNS Is Excused From Any Obligation To Provide In-Person Classes From March
             2020 Through The Remainder Of The Semester Due To Impossibility Of
             Performance................................................................................... 19

        E.   Plaintiffs' Breach of Contract Cause of Action Must Be Dismissed Due To The
             Doctrine of Acceptance. ................................................................. 20

III.    PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST
        ENRICHMENT. ...................................................................... 21

        A.   Plaintiffs' Unjust Enrichment Cause Of Action Must Be Dismissed As Duplicative
             Of Their Breach Of Contract Cause of Action.......................................... 21

        B.   Plaintiffs Cannot Establish The Elements Of An Unjust Enrichment Claim............ 23

CONCLUSION.......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Amable v. New Sch.</u>,
  2021 U.S. Dist. LEXIS 139853 (S.D.N.Y., July 27, 2021) ....................................................11

<u>Ashcroft v. Iqbal</u>,
  556 U.S. 662 (2009)..............................................................................................................6

<u>Bell Atl. Corp. v. Twombly</u>,
  550 U.S. 544 (2007)..............................................................................................................6

<u>Bolt Elec. v. City of N.Y.</u>,
  53 F.3d 465 (2d Cir. 1995)....................................................................................................6

<u>Brittain v. Trustees of Columbia University in New York</u>,
  2021 U.S. Dist. LEXIS 151082 (S.D.N.Y. Aug. 11, 2021) ...................................13, 14, 21, 22

<u>Broder v. Cablevision Sys. Corp.</u>,
  418 F.3d 187 (2d Cir. 2005)..................................................................................................3

<u>Chase Manhattan Bank v. Traffic Stream Infrastructure</u>,
  52 Fed. App'x 528 (2d Cir. 2002).........................................................................................19

<u>Clark v. Daby</u>,
  300 A.D.2d 732 (3d Dept. 2002) ..........................................................................................24

<u>Ebert v. Holiday Inn</u>,
  628 Fed. Appx. 21 (2d Cir. 2015) .........................................................................................19

<u>Emerson Elec. Co. v. Asset Mgmt. Assocs.</u>,
  2012 U.S. Dist. LEXIS 39442 (E.D.N.Y. Mar. 20, 2012).......................................................20

<u>Espejo v. Cornell Univ.</u>,
  523 F. Supp. 3d 228 (N.D.N.Y. 2021) ...............................................................................15, 16

<u>Faber v. Cornell Univ.</u>,
  2021 U.S. Dist. LEXIS 204816 (N.D.N.Y, Oct. 25, 2021) ...............................................16, 17

<u>Fedele v. Marist Coll.</u>,
  2021 U.S. Dist. LEXIS 150094 (S.D.N.Y., Aug. 10, 2021) .......................................11, 22, 23

Flatscher v. Manhattan School of Music,
    2021 U.S. Dist. LEXIS 135046 (S.D.N.Y. July 20, 2021) ................................................12, 14

Gally v. Columbia Univ.,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)................................................................................7

Gebhardt v. Allspect, Inc.,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000)...............................................................................6

Getko Grp., Inc. v. Amica Mut. Ins. Co.,
    2003 U.S. Dist. LEXIS 19238 (S.D.N.Y. Oct. 28, 2003) .......................................................17

Goldberg v. Pace Univ.,
    2021 U.S. Dist. LEXIS 76762 (S.D.N.Y. Apr. 21, 2021).....................7, 11, 12, 14, 15, 22, 23

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999)...........................................................................................6

Harsco Corp. v. Segui,
    91 F.3d 337 (2d Cir. 1996)............................................................................................7

Hassan v. Fordham Univ.,
    515 F. Supp. 3d 77 (S.D.N.Y. 2021)...................................................................7, 14, 23

L. N. Jackson & Co. v. Royal Norwegian Gov't,
    177 F.2d 694 (2d Cir. 1949)..........................................................................................19

Marbury v. Pace Univ. (In re Columbia Tuition Refund Action),
    523 F. Supp. 3d 414 (S.D.N.Y. 2021).................................................................21, 22, 23

Metzner v. Quinnipiac Univ.,
    2021 U.S. Dist. LEXIS 56744 (S.D.N.Y. Mar. 25, 2021) ....................................................18

Morales v. New York Univ.,
    2021 U.S. Dist. LEXIS 50333 (S.D.N.Y. Mar. 17, 2021) ....................................................10

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998).............................................................................................4

Paramount Film Distrib. Corp. v. State,
    30 N.Y.2d 415 (1972) ..................................................................................................23

Paynter v. New York Univ.,
    66 Misc. 2d 92 (N.Y. App. Term 1971)...........................................................................16

Pearson v. Walden Univ.,
    144 F. Supp. 3d 503 (S.D.N.Y. 2015)..............................................................................14

Sang Lan v. Aol Time Warner, Inc.,
    2012 U.S. Dist. LEXIS 187899 (S.D.N.Y. Aug. 13, 2012) ....................................................21

Subaru Distribs. Corp. v. Subaru of Am., Inc.,
    425 F.3d 119 (2d Cir. 2005)...........................................................................................................6

Zagoria v. New York Univ.,
    2021 U.S. Dist. LEXIS 50329 (S.D.N.Y. Mar. 17, 2021) ........................................................22

## PRELIMINARY STATEMENT

In mid-March 2020, like almost every other institution of higher learning in the country, and every school located in the State of New York, the unprecedented effects of the COVID-19 pandemic, which included the rapid spread of a deadly disease and the resulting issuance of Executive Orders by New York's Governor mandating the suspension of all in-person classes for all levels of schools, forced Defendant The New School ("TNS" or the "University") to quickly shift to a virtual learning environment.  Despite this fact, TNS enabled Plaintiffs Collyn Ahrens Aubrey, Steven Baboun, Kaeten J. Bonli, Jingruo Cheng, Lydia K. Crouse, Karen Dias, Caroline A. Garcia, Tere Garcia, Amanda Johnson, Javarius Jones, Tania Khouri, Josephine Lee, Rae Lavande Pellerin, Jessica Saldana, Coraline Jingyan Weng, and Snow Xuecan Ye (collectively "Plaintiffs"), and all students of TNS's Parsons School of Design, to complete the Spring 2020 Semester by transitioning its academic and other services to a remote modality.  Plaintiffs did not withdraw, or attempt to withdraw, from the University. Rather, they continued their course of education, attending virtual classes and accepting credits toward their degrees for the courses they completed.  Yet Plaintiffs now sue TNS on behalf of themselves and all others who paid tuition and other fees to be enrolled in the Parsons School of Design for the Spring 2020 Semester, demanding the return of the entirety of the tuition and fees paid for the Spring 2020 Semester despite attending half the semester in person and continuing to receive the virtual education TNS provided for the second half of the semester.  Plaintiffs do so even though these virtual classes enabled them to complete, and receive credit for, the Spring 2020 Semester in the midst of a COVID-19 outbreak in New York City.  Plaintiffs' claims are unsupportable.

Specifically, Plaintiffs bring causes of action for breach of contract and unjust enrichment seeking to recoup an after-the-fact refund of the entirety of the tuition for the semester when instruction was required to be delivered partially through a virtual platform - - due to circumstances entirely beyond the control of TNS.  Plaintiffs claim to be owed this refund because they did not expect the shift to virtual learning when they began the semester.  Ultimately, the illogic of the Plaintiffs' case is that TNS was obligated to either: (1) continue providing on campus, in-person classes to its students notwithstanding the health consequences for students and faculty, and without regard for the Executive Orders prohibiting physically in-person classes; or (2) fully refund students some prorated cost of tuition for weeks of virtual instruction despite continued attendance in classes and acceptance of course credit.

TNS respectfully submits that both causes of action asserted in Plaintiffs' Class Action Complaint ("Complaint") are unsupportable as a matter of law, and Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

Plaintiffs' breach of contract claim fails because, among other things, Plaintiffs do not and cannot point to any specific promise by TNS to provide only in-person classes and services no matter the circumstance, including in the midst of a pandemic.  In their Complaint, Plaintiffs essentially contend that Parsons' status as a fine arts school lowers the bar for what New York law would typically require to show a promise for solely in-person education.  There is no support for Plaintiffs' suggestion that a promise should be implied where none was made, and the cases Plaintiffs will rely upon all are readily distinguishable.  Plaintiffs' attempts to wring a contractual promise for solely in-person instruction through TNS's "catalogues, regulations, handbooks, statements included in manuals, class syllabi, and materials concerning studios and facilities and related documents" are legally deficient, especially in light of the

specific reservation of rights statement contained within TNS's 2019-20 academic catalog, as well as the "Your Right To Know" section of TNS's website as it read leading into the Spring 2020 Semester,[1] which specifically explained:

> The information included in the catalogs and all materials of the university represents the plans of The New School at the time they are made public. The university reserves the right to change without notice any content in its print or online materials, including but not limited to tuition, fees, policies, degree programs, names of programs, course offerings, academic activities, academic requirements, facilities, faculty, and administrators. Payment of tuition and attendance of classes constitute acceptance of university policies set forth on this page and in the catalogs and other pages linked from it.

*Your Right To Know*, THE NEW SCHOOL, http://web.archive.org/web/20191214120218/https://www.newschool.edu/about/university-resources/right-to-know/ (last visited Nov. 15, 2021).  Plaintiffs' unjust enrichment claim also must be dismissed as an attempt to repackage Plaintiffs' flawed breach of contract cause of action.

Plaintiffs do not assert TNS should have continued to provide in-person, on campus classes for the remainder of the Spring 2020 Semester.  Plaintiffs also do not allege they were unable to continue their classes remotely.  Nor do Plaintiffs allege that TNS denied them any credits for classes they completed.  Instead, Plaintiffs ultimately are seeking a judgment from the Court that essentially would permit Plaintiffs to have attended TNS's virtual classes and retain the resulting credits all <u>at no cost</u>.  Such a result would be grossly inequitable and is legally unsupportable.

---

[1]     When a plaintiff "relies on the terms and effect of" an agreement in her complaint, a document reflecting that agreement is "integral to the complaint" and the Court may look to the agreement itself even if not formally incorporated by reference.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  Copies of the relevant portion of the 2019-20 academic catalog and the *Your Right To Know* section of TNS's website are attached to the Affirmation Of Jonathan M. Kozak In Support Of Defendant's Motion To Dismiss ("Kozak Aff.") as Exhibits 1 and 2.

It is indisputable that the pandemic dramatically changed how everyone in the country functioned day-to-day, especially in the second half of March, April, and May 2020. Lives and routines were upended, and far too many people experienced the trauma and heartache of serious illness and/or death as a result of the COVID-19 pandemic. Nonetheless, TNS did its part to protect the health and safety of its students, faculty, staff, and the community, by suspending on campus, in-person classes, and transitioning to a virtual environment, enabling students to continue to receive academic instruction and earn credits toward their chosen degrees. TNS's efforts to preserve and complete the Spring 2020 Semester were a benefit to Plaintiffs, and certainly did not breach any specific contractual promise limiting the modality of educational services. Thus, Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim upon which relief may be granted.

## BACKGROUND[2]

Plaintiffs were enrolled as students in the Master of Fine Arts ("MFA") program at TNS's Parsons School of Design for the Spring 2020 Semester. (Complaint ¶¶ 4-19). On March 7, 2020, Governor Cuomo issued an Executive Order whereby he declared a state of emergency across the State of New York as a result of the public health effects of the COVID-19 pandemic. See N.Y. Exec. Order No. 202 (Mar. 7, 2020).[3] On March 18, 2020, Governor Cuomo issued an Executive Order requiring non-essential businesses to reduce their in-person workforce by 50%. See N.Y. Exec. Order No. 202.6 (Mar. 18, 2020).[4] As the public health crisis in New York was evolving so rapidly, just two days later, on March 20, 2020, Governor

---

[2]     The factual allegations asserted in Plaintiff's Complaint, which are contained within this recitation, are accepted as true solely for purposes of this motion.

[3]     When reviewing a motion to dismiss, courts may take judicial notice of matters of public record, such as executive orders. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998). A copy of N.Y. Exec. Order No. 202 (Mar. 7, 2020) is attached to the Kozak Aff. as Exhibit 3.

[4]     A copy of N.Y. Exec. Order No. 202.6 (Mar. 18, 2020) is attached to the Kozak Aff. as Exhibit 4.

Cuomo issued another Executive Order requiring non-essential businesses to reduce their in-person workforce by 100% as of March 22, 2020.  See N.Y. Exec. Order No. 202.8 (Mar. 20, 2020).[5]

On March 26, 2020, TNS announced that it would need to temporarily suspend all in-person, on-campus classes and transition to virtual classes.  (Complaint ¶ 45).  TNS's decision to switch to virtual classes for the remainder of the Spring 2020 Semester was in accordance with New York State-issued guidance on Governor Cuomo's Executive Orders, which allowed for "remote instruction or streaming of classes from public or private schools or health/fitness centers; provided, however, that no in-person congregate classes are permitted."  See N.Y. State, Guidance on Executive Order 202.6, *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders* (updated June 29, 2020), https://esd.ny.gov/guidance-executive-order-2026 (emphasis added).[6]  On March 24, 2020 TNS announced that it would be issuing a *pro rata* refund to all students who paid to live in the University's residence halls or paid for dining plans in an amount equal to the percentage of time remaining in the Spring 2020 Semester.[7]

Plaintiffs filed their Class Action Complaint on or about June 3, 2021.[8]

## ARGUMENT

## I.   LEGAL STANDARD.

Rule 12(b)(6) requires dismissal of a cause of action when the plaintiff fails to state a claim upon which relief may be granted.  "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a

---

[5]   A copy of N.Y. Exec. Order No. 202.8 (Mar. 20, 2020) is attached to the Kozak Aff. as Exhibit 5.
[6]   A copy of N.Y. State, Guidance on Executive Order 202.6, *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders* (updated June 29, 2020) is attached to the Kozak Aff. as Exhibit 6.
[7]   A copy of the March 24, 2020 email to students is attached to the Kozak Aff. as Exhibit 7.
[8]   A copy of Plaintiffs' Class Action Complaint is attached to the Kozak Aff. as Exhibit 8.

formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  In evaluating a motion to dismiss, the Court "must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." See Bolt Elec. v. City of N.Y., 53 F.3d 465, 469 (2d Cir. 1995) (internal citations omitted); Harris v. City of N.Y., 186 F.3d 243, 247 (2d Cir. 1999).  To avoid dismissal, however, the plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).

After the Court winnows conclusory statements from a complaint and assumes any remaining factual allegations to be true, the Court must determine whether the complaint pleads "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).  To survive a motion to dismiss, the plaintiff must plead factual allegations with sufficient specificity "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (dismissing complaint where plaintiffs had not "nudged their claims across the line from conceivable to plausible").  In other words, a plaintiff's complaint must be dismissed if it does not contain sufficient factual, non-conclusory allegations to allow the Court to "draw the reasonable inference that . . . [D]efendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Finally, in evaluating a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

6

II.     __PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT.__

      Plaintiffs' breach of contract cause of action should be dismissed due to Plaintiffs' failure to adequately plead the elements necessary to establish a breach of contract (i.e., the existence of a promise by TNS to provide only in-person classes to the exclusion of any other modality, TNS's breach of that promise, and resulting damages). See Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (stating elements of breach of contract cause of action).

A.     __Plaintiffs' Breach Of Contract Cause Of Action Must Be Dismissed Because Plaintiffs Fail To Adequately Plead The Existence Of Any Promise To Provide Only In-Person Classes.__

      New York Courts adhere to a stringent standard in assessing the viability of breach of contract claims involving students and universities. See Gally v. Columbia Univ., 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) ("The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student."). Under New York law, students and universities enter into an implied contract upon a student's enrollment. See Goldberg v. Pace Univ., 2021 U.S. Dist. LEXIS 76762, at *19 (S.D.N.Y. Apr. 21, 2021); Gally, 22 F. Supp. 2d at 206 ("When a student enrolls at a university, an implied contract arises: if the student complies with the terms prescribed by the university, she will obtain the degree she seeks."). However, "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted." Goldberg, 2021 U.S. Dist. LEXIS 76762, at *19 (quoting Gally, 22 F. Supp. 2d at 207); Hassan v. Fordham Univ., 515 F. Supp. 3d 77, 89 (S.D.N.Y. 2021) (dismissing a student's breach of contract claim where the Plaintiff failed to sufficiently plead their implied contract with Fordham contained promises of "certain specified services" or identify a "'specific promise' to provide in-person education") (quoting Baldridge v. State, 293 A.D.2d 941, 943 (3d Dept. 2002)).

Here, Plaintiffs do not point to any particular agreement or document wherein TNS promised to provide only on-campus, in-person instruction for the entirety of the Spring 2020 Semester or otherwise prohibiting the continuation of classes virtually when prevented from doing so in-person regardless of any exigent circumstances.  Nor do Plaintiffs identify any language guaranteeing unfettered and/or unrestricted access to any specific resource, service, or facility.  That is because no such promises exist.  In particular, neither the TNS website nor the Parsons BFA/MFA Fine Arts 2019-2020 Handbook ("Handbook") contains any language prohibiting TNS from changing the location, time, or modality of any particular class as may be required from time to time.  This omission is fatal to Plaintiffs' breach of contract cause of action.

In their Complaint, Plaintiffs reference various purported quotes from TNS's website and literature.  Plaintiffs, however, fail to provide specific citations or links to any of the quoted content.  Many of the quotes upon which Plaintiffs' Complaint relies are found on TNS's current website and were not present prior to the start of the Spring 2020 Semester, when students were enrolling for the semester.  For example, Plaintiffs highlight language providing that "Parsons faculty comprises world-renowned artists, scholars, and practitioners who lead their industries and academic fields. You work closely with them, benefitting from their scholarship and professional experience and networks. Our small class sizes enable you to benefit from their real-world experience and industry access."  (Complaint ¶ 26).  This statement, however, did not appear on TNS's website until May 30, 2020.  (Bate Dec., ¶ 3).[9]  Similarly, Plaintiffs highlight language from TNS's website stating that Parsons' mission includes providing students with the ability to "explore multiple sites and scales of engagement, from on-campus research initiatives to partnerships that bring about change in New York and in the world."  (Complaint ¶ 27).  This

---

[9]  Paragraphs from the accompanying Declaration of Christopher Bate In Support Of Defendant's Motion To Dismiss are referenced herein as "(Bate Dec., ¶ __)."

language was not present until March 24, 2020. (Bate Dec., ¶ 4). Plaintiffs also rely on TNS's description of the "Making Center" as the "anchor" of TNS's "network of integrated campus resources" where students can participate in "project-based learning experiences to make full use of the . . . state-of-the-art making equipment." (Complaint ¶ 40). Plaintiffs, however, could not have seen this language before enrolling in the Spring 2020 Semester because it did not appear on TNS's website until May 9, 2020. (Bate Dec., ¶ 5). Plaintiffs also highlight language describing the "thirty-four (34) labs, shops, [and] studios" TNS's website describes, including access to "new 3D-printing technologies, a complete ceramics 'wet lab,' updated printmaking facilities including a large-scale photo printer, and white boards, pin-up areas, and configurable work spaces for developing and sharing ideas." (Complaint ¶ 41). This detailed list did not appear on TNS's website until May 9, 2020. (Bate Dec., ¶ 6). Finally, Plaintiffs reference a list of "labs, shops, and studios" including "the 3D Printer Lab, the Alternative Process Darkroom, the Book Arts Studio, the Ceramics & Wet Shop, the D12 Prototyping Shop, the Darkroom, the Design Lab, the Digital Knit Lab, Digital Photo Labs, and the E2 CNC Shop." (Complaint ¶ 42). However, this list was not present on TNS's website until August 17, 2020. (Bate Dec., ¶ 7). Thus, it would have been impossible for Plaintiffs to have relied on these particular statements, as alleged, or for these statements to form a basis for any specific promise (which TNS maintains they do not, regardless) between Plaintiffs and TNS for solely in-person coursework for the entirety of the Spring 2020 Semester.

If the Court finds Plaintiffs could have relied on these statements found on TNS's website only after the start and/or conclusion of the Spring 2020 Semester, then equal weight should be afforded the disclaimer found on the current version of TNS's website. On the portion

of TNS's website that addresses tuition and fees for the 2020-2021 academic year, under the section entitled "Important Information About Policy, Tuition & Fees," TNS states that:

> [T]here may be situations where, for the health, safety and/or wellbeing of [TNS's] community and as determined by the University in its discretion, [TNS] will be required to make changes to methods and timing of instruction, delivery of an access to services and course content, etc., including possibly implementing a full or partial campus closure, temporary suspension of classes and services, and/or switching from on-campus learning and delivery of services to distance or remote learning and delivery of services. . . . [T]he University does not in any way guarantee in-person, on-campus education or services or any other particular format of education or services. Finally, you understand and agree that you are responsible for all tuition and fees, regardless of the format in which education and services are provided, and that no refunds or credits for tuition, fees, or other expenses will be provided in the event of such changes, including any changes from on-campus education and/or services to remote services and/or remote learning.[10]

Moreover, to the extent statements on TNS's website regarding its facilities and offerings as referenced in Plaintiffs' Complaint appeared on TNS's website or in TNS materials prior to the Spring 2020 Semester, they simply do <u>not</u> support a contractual obligation barring the continuation of classes virtually, especially in the midst of a pandemic.  None of the statements from the TNS website or Handbook contain any promise upon which Plaintiffs may base their breach of contract cause of action.  Most identify only the physical location TNS reserved for Plaintiffs' desired coursework.  Therefore, as a matter of law, the descriptions found on the TNS website and in the Handbook cannot meet the high standard that New York courts require for a student to plead the existence of an enforceable contract against a university.  <u>See</u> <u>Morales v. New York Univ.</u>, 2021 U.S. Dist. LEXIS 50333, at *3 (S.D.N.Y. Mar. 17, 2021) (finding Course Catalog references to "building locations, classroom numbers, and instructions modes" do not "imply a contractual entitlement to continued instruction in the same location and manner" and

---

[10]      A copy of the portion of TNS's website setting forth TNS's Reservation of Rights for the 2020-21 school year, available at https://www.newschool.edu/tuition-fees-billing/prior-tuition/, is attached to the Kozak Aff. as Exhibit 9.

"merely memorialize the pre-pandemic practice") (quoting <u>In re Columbia Tuition Refund Action</u>, 2021 U.S. Dist. LEXIS 36659, at *4 (S.D.N.Y. Feb. 26, 2021)).[11]  The balance of the allegations in Plaintiffs' Complaint referencing the benefits of attending school in New York City, a collaborative learning environment, and generally detail TNS's facilities serve only as marketing and promotional statements that are classic marketing "'puffery' . . . 'too vague to be enforced as a contract.'"  <u>Amable v. New Sch.</u>, 2021 U.S. Dist. LEXIS 139853 at *17 (S.D.N.Y., July 27, 2021) (quoting <u>Morales v. New York Univ.</u>, 2021 U.S. Dist. LEXIS 50333, at *3 n. 1 (S.D.N.Y. Mar. 17, 2021)); <u>Fedele v. Marist Coll.</u>, 2021 U.S. Dist. LEXIS 150094 at *13 n. 5 (S.D.N.Y., Aug. 10, 2021) ("references in [college and universities'] marketing materials to 'the on-campus experience' are not sufficient to support a claim" for breach of contract) (quoting <u>Marbury v. Pace Univ. (In re Columbia Tuition Refund Action)</u>, 523 F. Supp. 3d 414, 423 (S.D.N.Y. 2021)).

Plaintiffs' attempts to argue that any content from the TNS website or Handbook should be deemed a promise to provide solely in-person classes are further unsupportable in light of the specific reservation of rights contained within TNS's 2019-20 academic catalog and the "Your Right To Know" section of TNS's website, wherein the University expressly "reserves the right to change without notice any content in its print or online materials, including but not limited to tuition, fees, policies, degree programs, names of programs, course offerings, academic activities, academic requirements, facilities, faculty, and administrators."  (Kozak Aff., Exhibits 1 and 2).

Although, Plaintiffs will argue that the recent "art school" cases support their claims; they do not.  In <u>Goldberg v. Pace</u>, 2021 U.S. Dist. LEXIS 76762 (S.D.N.Y. Apr. 21, 2021), a performing arts graduate student brought suit to recover damages related to Pace's transition to remote learning in March 2020 because of COVID-19.  Pace's marketing materials,

---

[11]     Copies of all cases that are reported on LEXIS are attached to the Kozak Aff. as Exhibit 11.

syllabi, and catalogs described a collaborative environment where playwrights would train "side-by-side" with actors and directors.  Id. at *20.   The catalog further boasted about the collaborative nature of the third-year curriculum.  Id. at *21.  The district court noted it was clear that the statements the student relied on were "tacitly presupposing and almost certainly envisioning the familiar norm of in-person instruction," but they did "not contain or constitute a specific promise of such."  Id.  Although Pace placed an emphasis on collaboration in its program, it did not anywhere state the collaboration had to be in-person.  Instead, the statements merely "describe, but do not commit to, regular practice."  Id.  Here, TNS made similar statements on its website and in the Handbook on which Plaintiffs rely in their Complaint.  Like Goldberg, however, the statements on which Plaintiffs rely may have been made with in-person coursework in mind, but only set forth pre-pandemic norms and fall short of a guarantee or promised obligation.

In Flatscher v. Manhattan School of Music, 2021 U.S. Dist. LEXIS 135046 (S.D.N.Y. July 20, 2021), a vocalist in a Bachelor of Music degree program brought claims against the Manhattan School of Music to recover fees and tuition from the Spring 2020 Semester because the school closed certain facilities it had specifically promised access to.  In its promotional materials, the Manhattan School of Music held itself out to be a "first rate performing arts center" and a "musical conservatory" where students would have access to "state-of-the-art" facilities where they could gain "hands-on experience."  Id. at *16-18.  The school also represented that students could "expect 'visits from guest artists who [would] present music in *live* performance.'"  Id.  Here, there are no allegations that TNS ever made such direct representations leading up to the Spring 2020 Semester.  Although Plaintiffs point to some arguably similar language in their Complaint, including references to specific facilities and

equipment, as discussed above, many of these statements were not present on TNS's website at the beginning of the Spring 2020 Semester.

In Brittain v. Trustees of Columbia University in New York, 2021 U.S. Dist. LEXIS 151082 (S.D.N.Y. Aug. 11, 2021), the court did not grant dismissal, concluding Columbia made specific promises to students in three fine arts programs: visual arts, sound arts, and film. However, in Brittain, the plaintiffs alleged the handbooks for each program were wrought with "will" statements, informing students what Columbia committed to provide. See Id. at *19. In addition, students in the visual and sound arts programs were each assigned, and signed a lease for, an individual studio to serve as the location for meetings between the student, professors, critics, and peers. See Id. at *15-16. The lease agreement that students signed did not include any "term permitting Columbia to revoke a student's right of access under any circumstances." Id. at *16. Both programs consisted of four "core" components (Graduate Studio, Group Critique, Artist Mentorship, and Visiting Artist Lecture Series), each of which required use of studio space. See Id. at *16. In addition, the handbooks for each program guaranteed students at least 30 minutes of one-on-one time with visiting critics in their studios. See Id. at *17. Although not given a studio, film students were promised access to filming locations and equipment, and their production center was described as a "home-away-from-home" where students could edit their films. See Id. at *24. In contrast here, Plaintiffs do not allege they signed leases for studio space, nor were the studios essential to each component of Plaintiffs' programs. In addition, TNS's statements urging students to "contribute to events happening within the studios" cultivates a collaborative community, it does not to mandate or require physically in-person interaction. Thus, the statements on which Plaintiffs rely here fall short of the affirmative institutional guarantees alleged in Brittain.

13

Plaintiffs are unable to point to a document or statement containing any promise to provide all coursework in an in-person, on-campus format, to the exclusion of any other modality, for the entirety of the Spring 2020 Semester under all circumstances. The statements and commitments alleged in <u>Flatscher</u> and <u>Brittain</u>, go well beyond the general information found in TNS's materials which simply emphasize the collaborative nature of its MFA programs. Moreover, even if Plaintiffs could point to statements that were present at the start of the Spring 2020 Semester that rise to the level of the commitments claimed in <u>Flatscher</u> and <u>Brittain</u>, in light of the University's explicit reservation of its right to change the offered modality of classes as necessary, Plaintiffs cannot sustain a breach of contract cause of action based on TNS's transition to virtual classes for the second half of the Spring 2020 Semester as a result of the pandemic. <u>See</u> <u>Hassan</u>, 515 F. Supp. 3d 77 at 85-86 (holding that a claim for breach of contract against a university must be dismissed where there is no pleading of both a "specific promise to provide in-person educational services" and a "breach of the contract between [the university] and its students; <u>Pearson v. Walden Univ.</u>, 144 F. Supp. 3d 503, 509 (S.D.N.Y. 2015) ("The mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim upon which a relief can be granted.") (quoting <u>Gally</u>, 22 F. Supp. 2d at 207).

**B.** **<u>Plaintiffs Fail To Plead Breach Of Any Express Or Implied Promise To Provide Only On Campus, In-Person Classes.</u>**

Moreover, even if Plaintiffs could point to a specific promise by TNS to provide only in-person classes for the entirety of the Spring 2020 Semester under all possible circumstances, Plaintiffs' breach of contract cause of action must be dismissed because they cannot show an actionable breach of that promise by TNS. In <u>Goldberg</u>, although the court ruled that Pace did not make any promises for solely in-person learning, the court found that Pace made enforceable promises: (1) to "hold a seven-week Rep-Season in which all Actors Studio

students perform plays written by the students"; and (2) to hold a "Process Lab," which was a required course to help students prepare their plays for Rep-Season.  See Goldberg, 2021 U.S. Dist. LEXIS 76762 at *26, 30.  Nevertheless, the court still dismissed the claims with regard to those programs as unripe because Pace had not breached the promise by postponing the Rep-Season and Process Lab "pending abatement of the pandemic."  Id.  The court also held Pace was within its right to postpone them because its graduate catalog stated "unforeseen circumstances may necessitate adjustment to class schedules and extension of time for completion of class assignments."  Id. at *28.  Here, the "Your Right To Know" section of TNS's website makes clear that what is written in university materials merely "represents the plans of The New School at the time they are made public" but that TNS "reserves the right to change without notice any content in its print or online materials." (Kozak Aff., Exhibits 1 and 2).  In furtherance of that right, Parsons postponed the Thesis Exhibitions for the classes of 2020 and 2021, holding them from October 5 to 16, 2021 for the class of 2020, and October 26 to November 8, 2021 for the class of 2021.  (Schreiber Dec., ¶¶ 3-4).[12]  Moreover, the Thesis Exhibition for master of fine arts photo students class of 2020 is scheduled to open on December 3, 2021 and close on December 14, 2021.[13]  (Schreiber Dec., ¶ 5).  Thus, even if Plaintiffs can point to an enforceable promise by TNS to hold these exhibitions (which they cannot), TNS did not breach that promise.

Moreover, in Espejo v. Cornell Univ., 523 F. Supp. 3d 228 (N.D.N.Y. 2021), students asserted a breach of contract claim against Cornell relating to Cornell's decision to end in-person instruction during the Spring 2020 semester because of COVID-19.  The district court found that the language in Cornell's mission statement "specifically includes 'experiences in the

---

[12]     Paragraphs from the accompanying Declaration of Rachel Schreiber In Support Of Defendant's Motion To Dismiss are referenced herein as "(Schreiber Dec., ¶ __)."
[13]     None of the Plaintiffs are members of the Parsons masters of fine arts photo class of 2021.

classroom' and 'on campus'" and that such language rose the level of a promise for in-person instruction.  Id. at 239.  However, in Faber v. Cornell Univ., 2021 U.S. Dist. LEXIS 204816 (N.D.N.Y, Oct. 25, 2021), the district court reconsidered its prior conclusion that Cornell breached the alleged promise in its mission statement.  On reconsideration, the court found the mission statement contained no promise of "only" in-person instruction or "any limitation or qualification on 'in the classroom' or 'on campus.'"  Id. at *9.  Thus, the court determined Cornell needed only to provide in-person instruction for at least part of the semester, not for any pre-determined amount of time.  The district court found, because the plaintiffs admitted in the complaint that Cornell provided in-person instruction "for the weeks and months leading up to March 13, 2020," Cornell fulfilled its promise and the breach of contract claim to recover tuition could not stand.  Id.

Here, similarly, Plaintiffs do not accuse TNS of cancelling classes, terminating educational services altogether, or failing to provide in-person instruction for the entirety of the semester.  Of course, Plaintiffs acknowledge that the Spring 2020 Semester began as expected, and that it continued (albeit differently) despite the pandemic.  All classes were provided, educational services continued, and those events that would have required in-person participation were postponed, not cancelled or eliminated.  Of course, Plaintiffs acknowledge that TNS transitioned to virtual coursework because of the COVID-19 pandemic.  (Complaint ¶¶ 1, 22, 54).  A New York appellate court has previously ruled that the complete cessation of classes for nineteen days constituted an "insubstantial change made in the schedule of classes" which would not entitle students to a refund of tuition.  Paynter v. New York Univ., 66 Misc. 2d 92, 93 (N.Y. App. Term 1971).  In addition, the Northern District of New York has found that to the extent an institution promises in-person instruction, absent language promising such coursework will be

held "only" in-person, the institution fulfills that promise by providing at least some in-person instruction.  <u>Faber</u>, 2021 U.S. Dist. LEXIS 204816 at *9.  Therefore, it would be inconsistent to allow Plaintiffs' claim that TNS's mere transition to virtual coursework in response to the pandemic and in compliance with various Executive Orders requiring the cessation of in-person classes resulted in an actionable claim.

Even if the Court were to determine that Plaintiffs allege an enforceable promise by TNS to provide in-person classes during the Spring 2020 Semester, Plaintiffs' breach of contract claim should still be dismissed because Plaintiffs cannot show that TNS breached any such promise.

### C.   **Plaintiffs' Breach of Contract Cause of Action Must Be Dismissed Because Plaintiffs Did Not Suffer Any Cognizable Damages.**

Plaintiffs' breach of contract cause of action also fails because they cannot claim any quantifiable damage resulting from TNS's alleged breach. Following TNS's transition to virtual classes, Plaintiffs continued with all of their courses in the virtual format and accepted the resulting credit earned for each of those classes.[14]  Thus, Plaintiffs' damages boil down to a nebulous claim that the virtual coursework somehow "impaired the value of their education" or were lesser than in-person classes.  (Complaint ¶ 55).  These allegations are legally insufficient to establish the damages element of a breach of contract cause of action.  <u>See</u> <u>Getko Grp., Inc. v. Amica Mut. Ins. Co.</u>, 2003 U.S. Dist. LEXIS 19238, at *6 (S.D.N.Y. Oct. 28, 2003) ("[D]amages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.") citing <u>Kenford Co. v. Erie County</u>, 67 N.Y.2d 257 (1986).

---

[14]     Plaintiffs vaguely acknowledge in their Complaint that they continued to attend the virtual classes and received credit at the end of the semester.  But significantly, none allege they were unable to do so as a result of the transition mid-semester to the different modality.

Moreover, TNS charged the same rates for in-person and virtual classes during the Spring 2020 Semester.  As can be seen in the portions of TNS's website that set forth the tuition rates for the University's various programs, although per credit tuition rates vary by discipline, there is no distinction between tuition for in-person and virtual classes.[15]  Therefore, even if Plaintiffs argue that they want TNS to refund them the difference between the price of in-person and virtual classes, Plaintiffs will still be unable to quantify any cognizable amount of damages.  But see Metzner v. Quinnipiac Univ., 2021 U.S. Dist. LEXIS 56744 at *34 (S.D.N.Y. Mar. 25, 2021) (providing that online degree programs cost between $515 and $575 per credit and on-campus courses cost between $1,517.50 and $2,023.33 per credit).  Nevertheless, Plaintiffs are not seeking the difference between the price of in-person and virtual classes (as there is no difference); they are seeking a complete reimbursement of Plaintiffs' tuition for the Spring 2020 Semester (Complaint ¶¶ 2, 60) despite having undertaken the virtual coursework TNS provided, received course credit for doing so, and, in some cases, earned a Master of Fine Arts degree at the conclusion of the semester.

Finally, Plaintiffs also are unable to establish that they suffered any damages with regard to any contractual obligations arising out of the fees that they paid for the Spring 2020 Semester.  TNS returned *pro rata* portions of the charges students paid to live in the University's residence halls or for dining plans in an amount equal to the remainder of the Spring 2020 Semester.  See Kozak Aff. Exhibit 7.  Plaintiffs fail to allege any specific fees paid for any service not received.  Nevertheless, the only fees Plaintiffs paid which TNS retained were the University Services fee, the Student Senate fee, and the EPP Enrollment fee that is assessed against students that enter into a deferred tuition payment plan.  TNS properly retained these fees

---

[15]     A copy of the portion of TNS's website setting forth the tuition rates and fees for the 2019-20 school year, available at https://www.newschool.edu/tuition-fees-billing/prior-tuition/, is attached to the Kozak Aff. as Exhibit 10.

because they were related to services that were unaffected by the switch to virtual learning.  For example, the University Services fee covers the costs of various student conveniences, such as lifetime access to e-transcripts and e-diplomas and replacement ID cards.  <u>See</u> Exhibit 10 (pg. 31-32).  The Student Senate fee funds various initiatives by the student senate.  <u>Id.</u>  TNS charges the EPP Enrollment fee to students who enter into a deferred tuition payment plan to cover various costs associated with administration of managing and processing the payment plan.[16]  Because none of these items were affected in any manner by the closure of TNS's campus, the University properly retained them.  Therefore, Plaintiffs suffered no damages with regard to any contractual obligations arising from their payment of fees for the semester.

**D.    Plaintiffs' Breach Of Contract Cause Of Action Must Be Dismissed Because TNS Is Excused From Any Obligation To Provide In-Person Classes From March 2020 Through The Remainder Of The Semester Due To Impossibility Of Performance.**

Even if Plaintiffs were capable of establishing all of the elements of a breach of contract cause of action, the claim must be dismissed due to the doctrine of impossibility of performance.  "It is well settled New York law that impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible.  Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract."  <u>Chase Manhattan Bank v. Traffic Stream Infrastructure</u>, 52 Fed. App'x 528, 530 (2d Cir. 2002) (quoting <u>Kel Kim Corp. v. Cent. Mkts., Inc.</u>, 70 N.Y.2d 900, 902 (1987)); <u>Ebert v. Holiday Inn</u>, 628 Fed. Appx. 21, 23 (2d Cir. 2015) ("a defendant may be excused from a contractual obligation where performance is impossible"); <u>L. N. Jackson & Co. v. Royal Norwegian Gov't</u>,

---

[16]    A copy of the Spring 2020 - 5 Month Payment Plan Agreement for Plaintiff Josephine Lee, which includes the $55 finance charge (EPP Enrollment fee) that was assessed as part of her agreement to enter into the payment plan, is attached to the Declaration Of Rebecca Hunter In Support Of Defendant's Motion To Dismiss as Exhibit A.

177 F.2d 694, 697 (2d Cir. 1949) ("[I]it is well settled that a contractual duty is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prohibited by an administrative order made with due authority by an officer of the United States.").

The onset of the COVID-19 pandemic within New York City in early March 2020 made it impossible for TNS to continue to provide in-person classes.  Continuing in-person classes at a university in New York City would have unnecessarily placed students, faculty, staff, and everyone that came into contact with them, in an extremely high degree of danger and would have run directly afoul of all pleas from the government and health organizations to "flatten the curve."  Moreover, once Governor Cuomo issued the Executive Orders prohibiting all in-person classes within the State of New York, it would have been illegal for TNS to continue to hold in-person classes.  Additionally, one would be hard pressed to imagine another set of circumstances as unforeseeable as the COVID-19 pandemic, which essentially brought the entire country to a halt in a manner never before experienced.  Accordingly, Plaintiffs cannot advance their breach of contract cause of action because the specific performance Plaintiffs seek was impossible.

**E.**     **Plaintiffs' Breach of Contract Cause of Action Must Be Dismissed Due To The Doctrine of Acceptance.**

Finally, even assuming *arguendo* that TNS breached some contractual obligation to provide in-person classes to Plaintiffs (which TNS denies), Plaintiffs nevertheless waived any right to pursue a claim against the University due to such breach because Plaintiffs remained enrolled, continued to attend classes and complete coursework remotely, accepted the corresponding course credits toward their degrees, and, in some cases, earned their Master of Fine Arts degree at the conclusion of the semester.  It is well-settled that "[a]cceptance of benefit under the contract with knowledge of the wrong constitutes a waiver of the wrong."  Emerson

Elec. Co. v. Asset Mgmt. Assocs., 2012 U.S. Dist. LEXIS 39442, at *7 (E.D.N.Y. Mar. 20, 2012); Sang Lan v. Aol Time Warner, Inc., 2012 U.S. Dist. LEXIS 187899, *9-10 (S.D.N.Y. Aug. 13, 2012) ("Where 'a party has actual knowledge of a breach and continues to perform under and accepts the benefits of the contract, such continuing performance constitutes a waiver of the breach.'") (quoting National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 675 (S.D.N.Y. 1991)).

It is axiomatic that Plaintiffs cannot accept the benefit of the academic instruction that Plaintiffs obtained from TNS (i.e., the learning, credits, and degree received), but then avoid their obligation to pay tuition for same. Thus, even if Plaintiffs were able to plausibly plead all of the elements of a breach of contract cause of action relating to TNS's transition to virtual learning for the end of the Spring 2020 Semester (which they cannot), Plaintiffs waived their right to pursue any such claim. Accordingly, TNS is entitled to judgement as a matter of law.

## III. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT.

### A. Plaintiffs' Unjust Enrichment Cause Of Action Must Be Dismissed As Duplicative Of Their Breach Of Contract Cause of Action.

New York Courts do not allow plaintiffs to proceed with unjust enrichment causes of action when they are duplicative of breach of contract claims. See In re Columbia, 523 F. Supp. 3d at 430 (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 791 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.")); Brittain, 2021 U.S. Dist. LEXIS 151082, at *29 (S.D.N.Y. Aug. 11, 2021) ("When a plaintiff has asserted a claim based upon a valid and enforceable contract, an unjust enrichment claim should be dismissed as redundant."). Plaintiffs' unjust enrichment claim is based upon the exact same allegations, and seeks to recover the same damages, as their breach of

contract cause of action.  For that reason, Plaintiffs' unjust enrichment claim must be dismissed as duplicative of Plaintiffs' breach of contract cause of action.  See In re Columbia, 523 F. Supp. 3d at 430 (dismissing an unjust enrichment claim because they "rest[ed] on the same factual allegations as [the students'] contract claims"); Marist, 2021 U.S. Dist. LEXIS 150094 at *21 (dismissing an unjust enrichment claim when plaintiff could "provide no explanation as to how their unjust enrichment claims differ from their breach of contract claims").

Moreover, as previously discussed, it is generally accepted that universities have an implied contractual relationship with their students.  See Goldberg, 2021 U.S. Dist. LEXIS 76762 at *19 ("Under New York law, there exists an implied contract between a student and their college or university.").  Thus, although Plaintiffs and TNS may dispute their respective rights and obligations under the implied contract, there is no dispute that an implied contract exists.  See Id. at *34-35 ("[A]n implied contract existed between [the university] and [plaintiff] regarding [plaintiff]'s education. [Plaintiff] thus may not recover in quasi-contract for [the university]'s asserted breach."); Brittain, 2021 U.S. Dist. LEXIS 151082 at *30 ("In the face of a valid and enforceable contract, the quasi-contract claim of unjust enrichment should be dismissed.").

Therefore, as Plaintiffs' relationship with TNS is contractual in nature, Plaintiffs are barred from proceeding with an unjust enrichment cause of action in the alternative to their breach of contract cause of action.  See Zagoria v. New York Univ., 2021 U.S. Dist. LEXIS 50329, at *13 (S.D.N.Y. Mar. 17, 2021) ("New York law does not permit recovery on a quasi-contract claim such as unjust enrichment if the parties have a valid, enforceable contract that governs the same subject matters as the quasi-contract claim.").  Thus, Plaintiffs' unjust enrichment claim should be dismissed.

**B.**     <u>**Plaintiffs Cannot Establish The Elements Of An Unjust Enrichment Claim.**</u>

"To plead unjust enrichment under New York law, 'the Plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." <u>Marist</u>, 2021 U.S. Dist. LEXIS 150094 at *20 (quoting <u>Georgia Malone & Co., Inc. v. Rieder</u>, 19 N.Y.3d 511, 516 (2012)). Plaintiffs' unjust enrichment claim also will fail because Plaintiffs cannot establish that TNS was enriched at Plaintiffs' expense and that "equity and good conscience require restitution." <u>In re Columbia</u>, 523 F. Supp. 3d at 430 (quoting <u>Orange County Choppers, Inc. v. Olaes Enters.</u>, 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007)).

In analyzing unjust enrichment claims, New York courts look to "whether the defendant's conduct was tortious or fraudulent." <u>Hassan</u>, 515 F. Supp. 3d at 93 (quoting <u>Clark v. Daby</u>, 300 A.D.2d 732, 733 (3d Dept. 2002)); <u>Paramount Film Distrib. Corp. v. State</u>, 30 N.Y.2d 415, 421 (1972). Plaintiffs do not allege TNS engaged in any conduct that was tortious or fraudulent, nor can they. <u>See</u> <u>Hassan</u>, 515 F. Supp. 3d at 93 (finding no pleading of tortious or fraudulent conduct in light of the complaint's concession that the university acted promptly in response to COVID-19). TNS only switched Plaintiffs' classes to a virtual format because New York City was the epicenter of the U.S. outbreak of a global pandemic. Thus, "there were compelling—indeed, compulsory—reasons for [the university]'s abrupt move to online learning." <u>Goldberg</u>, 2021 U.S. Dist. LEXIS 76762 at *35. TNS was forced to work feverishly to devise a plan that would allow all students, who already had devoted half of the semester to their chosen studies, to complete the semester and obtain their credits. TNS continued to furnish Plaintiffs with an education, Plaintiffs earned credits toward graduation, and TNS has postponed (not cancelled) Plaintiffs' in-person exhibitions. TNS obtained no benefit. Regardless, even if there

were an alleged benefit to TNS from the transition to online instruction, it would have been "purely incidental."  See Clark v. Daby, 300 A.D.2d 732, 733 (3d Dept. 2002) (dismissing an unjust enrichment claim where the facts demonstrated only a "purely incidental" benefit to the defendant).

Although Plaintiffs claim virtual learning was somehow inferior to physically in-person coursework, such an argument is akin to the sort of educational malpractice claims that New York courts have declined to consider.  Ultimately, within a matter of days TNS implemented a system that allowed students to complete their courses and receive their credits without waiting for months with the hope that New York State would allow campuses to reopen at some point in the future.  As Plaintiffs cannot show that TNS acted in a manner that was "tortious and fraudulent" such that "equity and good conscience require restitution" to Plaintiffs, Plaintiffs cannot sustain their unjust enrichment cause of action.

## CONCLUSION

Based upon the foregoing, TNS respectfully requests the Court to enter an Order: (1) dismissing Plaintiffs' claims against TNS in their entirety and with prejudice; and (2) awarding TNS such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060

By: _____

Jonathan M. Kozak
Isaac J. Burker
Susan D. Friedfel
Matthew Bass

*ATTORNEYS FOR DEFENDANT*

Dated: November 18, 2021
White Plains, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

**COLLYN AHRENS AUBREY, STEVEN
BABOUN, KAETEN J. BONLI, JINGRUO
CHENG, LYDIA K. CROUSE, KAREN
DIAS, CAROLINE A. GARCIA, TERE
GARCIA, AMANDA JOHNSON, JAVARIUS
JONES, TANIA KHOURI, JOSEPHINE
LEE, RAE LAVANDE PELLERIN, JESSICA
SALDANA, CORALINE JINGYAN WENG
AND SNOW XUECAN YE,** on behalf of
themselves and all others similarly situated,

**Case No.7:21-CV-04915 (KMK)**

**Plaintiffs,**

-against-

**THE NEW SCHOOL,**

**Defendant.**

-------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Defendant's Memorandum Of

Law In Support Of Motion To Dismiss has been served via ECF and email on November 18,

2021 on counsel for Plaintiffs at the address of record set forth below:

Martin E. Karlinsky, Esq.
Karlinsky LLC
103 Mountain Road
Cornwall-on-Hudson, NY 12520
martin.karlinsky@karlinskyllc.com

_____

Jonathan M. Kozak